**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| In re:<br><br>**The Prospect-Woodward Home dba Hillside Village,**<br><br>Debtor | Chapter 11<br>Case No. 21-10523-BAH<br><br>Hearing: 9/24/21<br>10:00 AM |

**UNITED STATES TRUSTEE'S OBJECTION TO EMERGENCY EX PARTE MOTION OF DEBTOR FOR ENTRY OF AN ORDER DETERMINING THAT APPOINTMENT OF A PATIENT CARE OMBUDSMAN IS NOT REQUIRED IN THIS CASE**

Pursuant to 28 U.S.C. § 586, 11 U.S.C. §§ 333 and 307, and Fed. R. Bankr. P. 2007.2, William K. Harrington, the United States Trustee for Region 1 (the "**United States Trustee**") objects to the *Emergency Ex Parte Motion of Debtor for Entry of an Order Determining that Appointment of a Patient Care Ombudsman is Not Required in this Case* ("**Ombudsman Motion**") and respectfully states the following:

**I. PRELIMINARY STATEMENT**

The facts of this case warrant the appointment of a patient care ombudsman. The Debtor operates its health care business as a debtor-in-possession to a vulnerable population and may continue to do so for the next several months as it attempts to sell all of its assets. Many of the Debtor's residents require some level of medical care, and some are suffering from memory issues. Further, counsel for the State of New Hampshire advised that it would permit its Long-Term Care Ombudsman for the State of New Hampshire Department of Health and Human Services, DHHS

(the "**NH Ombudsman**") available to serve in this case if appointed.[1] The expenses associated with the appointment of the NH Ombudsman include her rate of approximately $50 per hour, plus travel and other regular expenses. The appointment of the NH Ombudsman would result in minor expenses for the estate, but would allow for a sophisticated and appropriate level of reporting consistent with 11 U.S.C. § 333.

## II. BACKGROUND

1. On August 30, 2021 (the "**Petition Date**"), The Prospect-Woodward Home (the "**Debtor**") filed a voluntary chapter 11 petition ("**Petition**") with the Court. ECF No. 1.

2. On its Petition, the Debtor identified itself as a health care business as defined in 11 U.S.C. § 101(27A). ECF No. 1, p.2.

3. The Debtor is a New Hampshire not-for-profit corporation which has obtained exemption from federal income taxes under Section 501(c)(3) of the Internal Revenue Code.

4. The Debtor owns and operates the continuing care retirement community in Keene, New Hampshire, known as Hillside Village (the "**Hillside Village Campus**"), which provides senior citizens with independent and assisted living accommodations and related healthcare services. ECF No. 14, pp. 3-4. The Hillside Village Campus includes: 140 independent living units, 61 assisted living units (including 18 that are designed for those afflicted with Alzheimer's disease or other memory impairments), and 20 private long-term care nursing beds. *Id.* As set forth in the Ombudsman Motion, the long-term care nursing beds are unoccupied and

---

[1] Under similar circumstances, the NH Ombudsman was appointed as the patient care ombudsman in the Chapter 11 bankruptcy cases of Sanctuary Care, LLC and Sanctuary at Rye Operations, LLC, Case Nos. 17-10591 and 17-10591 in the Bankruptcy Court for the District of New Hampshire. The rate of the NH Ombudsman in that matter was $50.42, and she sought total fees in the case of $3,642.40 and expenses of $505.93. *See* ECF No. 297.

2

will remain unoccupied during the pendency of the case. *Id.*

5. Pursuant to a Medical Director Services Agreement, the Debtor works with Cheshire Medical Center and with Dartmouth-Hitchcock Clinic, Keene Division, to provide on-site and/or off-site medical services to the residents of the Debtor on an as-needed basis. ECF No. 14, p. 3. The Debtor also works closely with skilled nursing facilities in the Keene area that provide short-term rehabilitative services funded through Medicare, as the Debtor does not provide those services in its onsite health center. *Id.*

6. Unlike limited purpose senior living facilities which specialize in providing care for a particular set of healthcare needs, the Debtor does not require its residents to relocate as their needs change. ECF No. 24, p. 4. Rather, based on the range of healthcare provided by the Debtor, its residents can remain in place as they age and their needs change. *Id.*

7. The Debtor's current occupancy levels include the following:

|  | Census | Capacity | Occupancy Rate |
|---|---|---|---|
| Independent Living Units | 103 | 141 | 73% |
| Assisted Living Units | 15 | 43 | 35% |
| Memory Care Units | 13 | 18 | 72% |
| Long-Term Care Units[2] | 0 | 20 | 0% |
| **Total** | **131** | **222** | **59%** |

ECF No. 24, p. 6.

8. The Debtor filed the Ombudsman Motion, supported by the Declaration of Toby Shea, Chief Restructuring Officer (the "**Shea Declaration**"), which describes the conditions giving rise to the Debtor's bankruptcy filing.

9. According to the Shea Declaration, the Debtor's financial distress is due to several factors. ECF No. 24, p. 14. The primary factors include the COVID-19 pandemic and

3

the construction defects and delays in connection with work performed by the Debtor's contractor. *Id.*

10. On the Petition Date, the Debtor filed a motion to sell its business pursuant to 11 U.S.C. § 363(f) (the "**Sale Motion**") setting forth Debtor's plan to sell all of its assets through a sale process. ECF No. 10.

### III. OBJECTION

#### A. Appointment of a Patient Care Ombudsman Under 11 U.S.C. § 333(a) Is Appropriate in This Case.

11. Section 333 of the Bankruptcy Code requires the appointment of a patient care ombudsman "to monitor the quality of patient care and to represent the interests of the patients of the health care business unless the court finds that the appointment of such ombudsman is not necessary for the patients under the specific facts of the case." 11 U.S.C. § 333(a)(1).

12. The appointment of a patient care ombudsman is mandatory unless (a) the Debtor does not qualify as a health care business, or (b) the Court finds the appointment is not necessary based on the facts of the case. *In re William L. Saber, M.D., P.C.*, 369 B.R. 631, 634 (Bankr. D. Colo. 2007).

13. The Debtor is a health care business as defined by section 101(27A) of the Bankruptcy Code. ECF No. 1, p. 2. Consequently, it is the Debtor's burden to demonstrate that the appointment of an ombudsman is not necessary for the protection of the patients in this case. *In re Smiley Dental Arlington, PLCC*, 503 B.R. 680, 688 (Bankr. N.D. Tex. 2013).

14. Section 333(a)(1) makes "clear that the protection of patients' interests is paramount when a health care business seeks reorganization." *In re Denali Family Servs.*, A13-

4

00114-GS, 2013 WL 1755481, at *4 (Bankr. D. Alaska Apr. 24, 2013).  Section 333 of the Bankruptcy Code was put in place because the patients of a health care business may have greatly different interests from other creditors.  *In re Denali Family Servs.*, 2013 WL 1755481, at * 1.

15. The Debtor commenced this case as a result of its financial distress.  While the Debtor intends on selling its business, it is unknown whether or when such a sale will be consummated.  Based on the current schedule, the Debtor will be operating its business for at least several months.  As with any Chapter 11 case that is a health care business, there is a chance patient care may be sacrificed or compromised during the reorganization process, especially given the Debtor's financial distress and the changes that will come with the transfer of all of the Debtor's assets to another entity.

16. The fact that the Debtor is subject to government oversight is a factor to be considered by the Court in determining whether to waive the appointment of an ombudsman.  The Debtor noted that it reports annually to the New Hampshire Director of Charitable Trusts, a division of the New Hampshire Department of Justice.  ECF No. 14, p. 3.  The Debtor also provided that it is current on the annual state surveys.  *Id.* at p.4.

17. However, if the NH Ombudsman is appointed in this case, she will "monitor the quality of patient care provided to patients by the debtor, to the extent necessary under the circumstances, including patients and physicians." 11 U.S.C. § 333(b)(2).  The services provided by the NH Ombudsman will be more expansive than an annual survey, and will address the current state of the Debtor.  The NH Ombudsman will provide details regarding the services provided and include specific findings to this Court.

18. The Debtor also asserted that the appointment of an ombudsman would be "duplicative and costly." ECF No. 14, p. 5. The cost impact of a patient care ombudsman, however, "must always be balanced against the potential risk to the debtor's patients if additional oversight from an ombudsman is not provided." *In re Denali Family Servs.*, 2013 WL1755481, at * 4. The State of New Hampshire has offered a reasonable solution to the appointment of an ombudsman and the expenses will be minimal in this case. The hourly rate proposed by the NH Ombudsman is a fraction of the amount charged by other professionals in this case.

19. While the Debtor cites a number of cases in which the Court did not appoint an ombudsman, many of the cases cited by the Debtor involved very different facts. *See In re Alternate Family Care*, 377 B.R. 757, 758 (Bankr. S.D. Fla. 2007) (child placing and caring agency); *In re N. Shore Hematology-Oncology Assocs., P.C.*, 400 B.R. 7 (Bankr. E.D. N.Y. 2008) (healthcare practice); *In re Flagship Franchises*, 484 B.R. at 763-66 (adult healthcare day center); *In re Pediatrics at Whitlock, P.C.*, 507 B.R. 10 (Bankr. N.D. Ga. 2014) (outpatient pediatric facility); *In re Valley Health System*, 381 B.R. 756 (Bankr. C.D.Cal. 2008) (publicly operated entity); *In re Smiley Dental Arlington, PLLC*, 503 B.R. 680 (Bankr. N.D. Tex. 2013) (debtor operates 19 dental clinics); *In re Saber*, 369 B.R. 631, 637-38 (Bankr. D.Colo. 2007) (single physician plastic surgery practice); *In re Med. Assocs. of Pinellas, L.L.C.*, 360 B.R. 356 (Bankr. M.D.Fla. 2007) (provides administrative support to physicians and their doctors); *In re Denali Family Servs.*, Case No. 13-00114-GS, 2013 WL 1755481, at *2-4 (Bankr. D. Alaska Apr. 13, 2013) (debtor provides behavioral health services to children); *In re Total Woman Healthcare Ctr., P.C.*, Case No. 06-52000, 2006 WL 3708164, at *4-6 (Bankr. M.D.Ga. Dec. 14, 2006) (women's healthcare clinic).

20.     The Debtor asserts that its record of patient care weighs in favor of excusing the appointment of an ombudsman.  However, the Debtor is a young business, and it did not begin opening in phases until January 2019.  ECF 24, p. 6.  The Debtor, therefore, has only provided medical services for a short period of time.  Based on the minimal amount of time that the Debtor has been operating, the fact that it does not have any reported complaints regarding its care is not a compelling reason to waive the ombudsman appointment requirement.

21.     Further, as the Debtor provides overnight care to its residents as opposed to out-patient treatment, the presence of an ombudsman is of vital importance.  Many of the Debtor's residents are in need of medical care, including those with memory issues.  Moreover, because the Debtor is a continuing care facility, the residents who are living independently will likely require medical care in the future.   Based on these facts, the appointment of the NH Ombudsman is warranted.

22.     Pursuant to 11 U.S.C. § 333, the United States Trustee requests that the Court deny the Ombudsman Motion and enter an order authorizing the appointment of the NH Ombudsman.

### B. Requiring the Debtor to Self-Report is Not a Practical Solution.

23.     The Debtor proposes to self-report to the Court and file an affidavit every 30 days in lieu of having the appointment of an ombudsman.  However, the Debtor is not a neutral party, and the Debtor is not a trained ombudsman.  The appointment of a neutral ombudsman serves an important purpose as that person will report to the Court routinely and alert all parties if any changes impact or may impact the quality or nature of the care the Debtor's residents receive as the Debtor transitions through the bankruptcy process.

24. Further, based on the rates of counsel for the Debtor ($440 to $850 for attorneys and from $210 to $375 for paraprofessionals) as compared to that of the NH Ombudsman (approximately $50 per hour) the solution is obvious. ECF No. 49, p. 18. The NH Ombudsman will prepare an unbiased report and file her findings with the Court for a small fraction of the cost of the Debtor's professionals.

25. If the NH Ombudsman is appointed to serve in this case, she will provide neutral information to this Court as a trained ombudsman. Allowing the NH Ombudsman to serve in this case would be a practical solution that would comply with 11 U.S.C. § 333 and provide assurance to interested parties that information will be appropriately reported.

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Ombudsman Motion, direct the United States Trustee to appoint the NH Ombudsman in this case, and grant such other and further relief as is just and proper.

Dated: September 17, 2021

Respectfully submitted,
WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE
By: /s/ *Kimberly Bacher*
    Kimberly Bacher, Trial Attorney
    Office of the U.S. Trustee
    53 Pleasant Street, Suite 2300
    Concord, NH 03301
    BNH07676

**CERTIFICATE OF SERVICE**

I hereby certify that on this September 17, 2021, I caused to be served a copy of the foregoing by CMECF to:

- **Stephen J Astringer**  sastringer@polsinelli.com, dandreacchi@polsinelli.com
- **Daniel S. Bleck**  dsbleck@mintz.com
- **Eric Blythe**  erblythe@mintz.com
- **Alan L. Braunstein**  abraunstein@riemerlaw.com, ahall@riemerlaw.com;mtoussaint@riemerlaw.com;ndailey@riemerlaw.com
- **Daniel M. Deschenes**  ddeschenes@hinckleyallen.com, ggilman@hinckleyallen.com;jdoran@hinckleyallen.com;spasakarnis@hinckleyallen.com;scomer@hinckleyallen.com
- **Donlin, Recano & Company, Inc**  ljordan@donlinrecano.com, nefrecipients@donlinrecano.com
- **Thomas J. Donovan**  tom.donovan@doj.nh.gov, audrey.blodgett@doj.nh.gov
- **Jennifer V. Doran**  jdoran@hinckleyallen.com, calirm@hinckleyallen.com
- **Christopher M. Dube**  christopher.dube@mclane.com, bankruptcy@mclane.com
- **Jeremy R. Fischer**  jfischer@dwmlaw.com, shayes@dwmlaw.com;kfisher@dwmlaw.com
- **Patrick E. Fitzmaurice**  patrick.fitzmaurice@pillsburylaw.com
- **Joseph A. Foster**  joe.foster@mclane.com, bankruptcy@mclane.com
- **Owen R. Graham**  ograham@hinckleyallen.com, scomer@hinckleyallen.com
- **Honor S. Heath**  honor.heath@eversource.com, honor.heath@hotmail.com
- **Andrew Helman**  andrew.helman@dentons.com, cheryl.jenkins@dentons.com;jennifer.weber@dentons.com;jeanette.henson@dentons.com
- **Jeremy Roy Johnson**  jeremy.johnson@polsinelli.com
- **Bruce J. Marshall**  bmarshall@marshalllawnh.com
- **J. Christopher Marshall**  christopher.marshall@doj.nh.gov, Patricia.A.Marden@doj.nh.gov
- **Erik Newman**  erik.newman@eversource.com
- **Charles R. Powell**  cpowell@devinemillimet.com, sleonard@devinemillimet.com
- **Frank P. Spinella**  fspinella@wadleighlaw.com, jjones@wadleighlaw.com
- **Lynne B. Xerras**  bos-bankruptcy@hklaw.com
- **Gina Young**  gina.young@dentons.com

/s/ *Kimberly Bacher*
Kimberly Bacher