**2023 BNH 007**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                  Bk. No. 21-10523-BAH
                                                                                                               Chapter 11
The Prospect-Woodward Home
dba Hillside Village Keene,
             Debtor

*Jeremy R. Fischer, Esq.*
*Kellie W. Fisher, Esq.*
*Drummond Woodsum*
*Manchester, New Hampshire*
*Attorneys for The MacMillin Company, LLC*

*Frank P. Spinella, Esq.*
*Wadleigh, Starr & Peters, PLLC*
*Manchester, New Hampshire*
*Attorney for Denron Plumbing & HVAC, LLC*

*Bruce J. Marshall, Esq.*
*Bruce J. Marshall Law Offices, PLLC*
*Bow, New Hampshire*
*Attorney for Wallace Building Products Corporation*

*Alan L. Braunstein, Esq.*
*Riemer & Braunstein LLP*
*Boston, Massachusetts*
*Attorney for J.N.R. Gutters, Inc.*

*Daniel S. Bleck, Esq.*
*Eric R. Blythe, Esq.*
*Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.*
*Boston, Massachusetts*
*Attorneys for UMB Bank, N.A. as Successor Bond Trustee to U.S. Bank National Association*

*Peter N. Tamposi, Esq.*
*The Tamposi Law Group, PC*
*Nashua, New Hampshire*
*Attorney for UMB Bank, N.A. as Successor Bond Trustee to U.S. Bank National Association*

*Jason A. Manekas, Esq.*
*Bernkopf Goodman LLP*
*Boston, Massachusetts*
*Attorney for UMB Bank, N.A. as Successor Bond Trustee to U.S. Bank National Association*

**AMENDED MEMORANDUM OPINION**

**I. INTRODUCTION**

The MacMillin Company, LLC (on behalf of itself and as assignee of Wayne J. Griffin Electric, Inc., Pro Stock Kitchens, LLC, Schindler Elevator Corporation, and Metro Walls, Inc.) (collectively, "MacMillin") filed a motion seeking a determination, pursuant to 11 U.S.C. § 506(a) and Federal Rule of Bankruptcy Procedure 3012,[1] that (1) its mechanic's lien has priority over the mortgage of UMB Bank, N.A. (the "Bond Trustee") as successor bond trustee to U.S. Bank National Association (the "Original Bond Trustee") for all amounts due under MacMillin's

---

[1] MacMillin cites Rule 3012 in support of it having made its request by motion. That rule provides in relevant part:

> (a) Determination of <u>Amount</u> of Claim. On request by a party in interest and after notice—to the holder of the claim and any other entity the court designates—and a hearing, the court may determine:
>
> (1) the <u>amount</u> of a secured claim under § 506(a) of the Code; or
>
> (2) the amount of a claim entitled to priority under § 507 of the Code.
>
> (b) Request for Determination; How Made. Except as provided in subdivision (c), a request to determine the <u>amount</u> of a secured claim may be made by motion, in a claim objection, or in a plan filed in a chapter 12 or chapter 13 case. When the request is made in a chapter 12 or chapter 13 plan, the plan shall be served on the holder of the claim and any other entity the court designates in the manner provided for service of a summons and complaint by Rule 7004. A request to determine the <u>amount</u> of a claim entitled to priority may be made only by motion after a claim is filed or in a claim objection.

Fed. R. Bankr. P. 3012(a) and (b) (emphasis added). MacMillin, the Subcontractors, and the Bond Trustee have not asked the Court to determine the <u>amount</u> of their claims (and in fact have reserved all rights with respect to that issue), <u>see</u> n.5, but rather the priority of their liens. This relief is more appropriately sought by filing an adversary proceeding:

> An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:
>
> …
>
> (2) a proceeding to determine the validity, <u>priority, or extent of a lien</u> or other interest in property, but not a proceeding under Rule 3012 or Rule 4003(d).

Fed. R. Bankr. P. 7001(2) (emphasis added). To date, no one, including the Court, has raised an issue about proceeding in the manner to which all parties have agreed. For that reason, the Court will proceed to address the merits of the relief requested by the parties.

construction contract with the Debtor; and (2) all amounts due MacMillin under the contract are fully secured (Doc. No. 400) (the "Motion").  Denron Plumbing & HVAC, LLC ("Denron"), Wallace Building Products Corporation ("Wallace"), and J.N.R. Gutters, Inc. (on behalf of itself and as assignee of American Builders and Contractors Supply Co.) (together, "JNR") (collectively, the "Subcontractors") have joined in the Motion and filed their own pleadings requesting that the secured status of their mechanics' liens also be established (Doc. Nos. 403, 406, and 417) (the "Joinders").  The Bond Trustee has objected to the relief requested by MacMillin and the Subcontractors and has requested that the Court find that its allowed secured claim has priority over MacMillin's and the Subcontractors' mechanics' liens for the amounts that the Bond Trustee paid for work performed on the Debtor's property (Doc. No. 463) (the "Objection").  The parties agreed that the Court could decide the issues based on a stipulated factual record, which MacMillin has filed with the Court (Doc. Nos. 401 and 438).  The Court held a hearing on May 6, 2022, on the Motion, the Joinders, the Objection, and the various responses and replies thereto and took the matters under advisement (Doc. No. 500).

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS[2]

At the time the Debtor filed a chapter 11 bankruptcy petition on August 20, 2021, the Debtor was a not-for-profit corporation that owned and operated a licensed continuing care retirement facility known as Hillside Village Keene, located in Keene, New Hampshire (the

---

[2] As noted above, the parties submitted a stipulated factual record which forms the basis for the Court's findings of fact.

"Facility"). Development of the Facility was financed through the issuance of bonds by the New Hampshire Health and Education Facilities Authority (the "Authority") in the principal amount of $93,015,000.00. On or about April 14, 2017, MacMillin and the Debtor executed a contract whereby MacMillin agreed to serve as the Debtor's construction manager for the construction of the Facility (the "Contract"). MacMillin agreed to a "guaranteed maximum price" for the project as long as construction commenced by June 30, 2017. MacMillin and some of its subcontractors commenced preliminary work at the Facility site on or about May 15, 2017. On or before June 19, 2017, MacMillin's subcontractors (including some of the Subcontractors) prepared numerous submittals and engineered drawings. None of the Subcontractors performed any work on site at the Facility before June 19, 2017.

The Original Bond Trustee signed a loan agreement, dated as of June 1, 2017, pursuant to which the Authority agreed to lend the proceeds of the bonds to the Debtor. On June 19, 2017, the Original Bond Trustee recorded its mortgage against the Facility. As part of the closing, the Debtor submitted five disbursements requests, which included documentation referencing a timber cut and tree cutting work, which of necessity had commenced prior to June 1, 2017, due to a wetlands permit issued in connection with the project that prohibited tree clearing between June 1 and July 31, 2017.[3]

From 2017 and continuing into 2019, MacMillin provided labor and materials under the Contract, both directly and through its subcontractors, and proceeds of the bonds were used to pay MacMillin, less retainage. During the course of construction, the Bond Trustee paid

---

[3] See Stipulated Ex. C. The fact that timber and tree clearing work needed to occur prior to the recording of the mortgage is further evidenced by the statements of the Debtor's representative, Edward Kelly of Kelly Real Estate Investment Properties, LLC, that "[w]e must take the trees down prior to June 1st. This will require that we have a clear path to do this or the financing of this great project could be substantially delayed or perhaps go away." Stipulated Ex. D. Invoices for this site work were presented to the Original Bond Trustee for payment at the bond closing. Stipulated Ex. P.

4

MacMillin not less than $55 million for labor and materials.  In connection with the payments, MacMillin executed partial lien waivers which expressly reserved MacMillin's mechanic's lien for unpaid retainage, interest, pending unresolved change order requests, unresolved claims, and amounts not yet billed by MacMillin's subcontractors and suppliers.  As construction neared completion in 2019, the Debtor stopped paying MacMillin, taking the position that it was entitled to withhold further payments because of alleged construction defects.

Between July 2019 and October 2019, MacMillin and various subcontractors filed suit for breach of contract and to preserve and perfect their mechanics' liens, by writ of attachment under New Hampshire statute, to secure their right to payment for labor and materials.  On October 25, 2019, after contested hearings, the state court determined that MacMillin and the Subcontractors were likely to prevail on their claims and were therefor entitled to attachments. The state court approved lien requests for MacMillin and the Subcontractors in the following amounts:

|  |  |
|---|---|
| MacMillin | $3,615,775.46[4] |
| Griffin: | $687,414.12 |
| Pro Stock: | $130,000.00 |
| Denron: | $693,535.44 |
| JNR: | $139,308.00 |
| American: | $121,779.69 |
| Wallace: | $325,579.64 |

On October 31, 2019, MacMillin recorded the writ of attachment and the state court's order.

After commencement of this bankruptcy case, MacMillin and the Subcontractors filed proofs of claim asserting secured claims in the following amounts:

| | |
|---|---|
| MacMillin: | $8,277,933.73 |

---

[4]  The state court found that MacMillin had met its burden of establishing its basic right of recovery in the amount of $5,713,392.34.  The state court then subtracted all the subcontract lien amounts from MacMillin's and approved a lien in this lower amount.

|          |                              |
|----------|------------------------------|
| Denron:  | $693,535.44                  |
| JNR:     | $242,806.47 and $121,779.69  |
| Wallace: | $342,000.00                  |

Effective July 2, 2020, the Bond Trustee was named successor trustee to the Original Bond Trustee. As of the commencement of this case, by virtue of its mortgage, the Bond Trustee holds an allowed claim, secured to the extent of the value of its lien on the Facility, in the amount of $64,659,386.30. On November 22, 2021, the Court approved a sale of the Facility for $33,000,000.00. The sale order provided that the various secured claims asserted against the Facility attached to the sale proceeds.

**III. DISCUSSION**

The Bond Trustee holds an allowed claim totaling more than $64 million, secured by its construction mortgage on the Facility, which was recorded with the registry of deeds on June 19, 2017. MacMillin and the Subcontractors also have allowed claims for which the state court, on October 25, 2019, allowed attachments to secure their mechanics' liens on the Facility in an amount totaling more than $5.7 million (Stipulated Ex. R). The Bond Trustee's mortgage and MacMillin's and the Subcontractors' mechanics' lien attachments all attached to the proceeds of the sale of the Facility with "the same validity, priority and extent as existed prior to such sale" in accordance with the Court's November 21, 2021, order approving the sale (Doc. No. 317). The Court is faced with a priority dispute between the Bond Trustee as construction mortgagee and MacMillin and the Subcontractors as mechanics' lienholders. The crux of the dispute is which law governs the priorities of their claims: New Hampshire's general "race-notice" rule or New Hampshire Revised Statutes Annotated ("RSA") 447:12-a.

MacMillin and the Subcontractors argue that RSA 447:12-a is inapplicable and that the race-notice rule applies. The Bond Trustee argues that RSA 447:12-a governs the dispute and

deprives the contractors of race-notice priority. MacMillin and the Subcontractors contend that their claims have priority over the Bond Trustee's claim and that all amounts due them under the Contract are fully secured pursuant to § 506(a) of the Bankruptcy Code. The Bond Trustee disagrees and contends that its claim has priority over MacMillin's and the Subcontractors' claims.

> The Bankruptcy Code provides in relevant part:
>
> An allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use … affecting such creditor's interest.

11 U.S.C. § 506(a). In the Motion and Joinders, MacMillin and the Subcontractors have asked the Court to determine the priority and extent of their secured claims. Section 506(a) of the Bankruptcy Code provides a secured creditor's claim is limited to the value of the collateral securing it. The value of the collateral in this case is $33 million, the proceeds from the sale of the Facility. The Bond Trustee holds a claim that exceeds $64 million. MacMillin and the Subcontractors have filed claims in this bankruptcy case that together total more than $9 million.[5] Clearly, the value of the collateral is insufficient to treat all asserted claims as secured. MacMillin's and the Subcontractors' mechanics' liens must have priority over the Bond

---

[5] MacMillin's proof of claim includes all amounts it alleges are due for labor and materials provided by MacMillin and all its subcontractors (including the Subcontractors) under the Contract. The state court attachment order subtracted all subcontractor lien amounts from MacMillin's.

To date, the allowed amount of MacMillin's and the Subcontractors' claims as well as the amount of MacMillin's and the Subcontractors' liens have not been determined. The parties have reserved all rights related thereto. In addition, the mechanic's lien claims arise under contracts that invariably contain arbitration clauses, which federal courts are generally bound to enforce. The determination of the relative priority of the mechanic's lien claims vis-à-vis the Bond Trustee's mortgage can occur without determining the amounts of those claims, including the extent to which the mechanic's lien claims may be subject to any defenses, setoffs or counterclaims.

Trustee's construction mortgage if MacMillin and the Subcontractors are to recover any of the net sale proceeds. For that reason, the Court must determine the priority of the competing claims.

"New Hampshire is a race-notice jurisdiction regarding priority of interests in real property." In re McLaughlin, Bk. Nos. 09-11671-JMD, 09-11672-JMD, and 09-11673-JMD, 2011 WL 1706791, at *3 (Bankr. D.N.H. May 4, 2011). New Hampshire's recording statute "acknowledges by negative implication the rule that the first party to record without notice of a priority party's claim has priority." ROK Builders, LLC v. 2010-1 SFG Venture, LLC v. (In re Moultonborough Hotel Group, LLC), 726 F.3d 1, 5 (1st Cir. 2013) ("Moultonborough III") (citing RSA 477:3-a).

In a race-notice jurisdiction,

> a purchaser or creditor has the senior claim if he or she records without notice of a prior unrecorded interest. The purpose then of the recording statutes … is to provide notice to the public of a conveyance of or encumbrance on real estate. The statutes serve to protect both those who already have interests in land and those who would like to acquire such interests.

Id.
In re Chase, 388 B.R. 462, 467 (Bankr. D.N.H. 2008) (quoting Amoskeag Bank v. Chagnon, 133 N.H. 11, 14 (1990)). Notice of a prior unrecorded interest may be (1) actual; (2) record (also referred to as constructive), or (3) inquiry. Bilden Props., LLC v. Birin, 165 N.H. 253, 258 (2013). A party is deemed to have notice of an unrecorded interest "upon receipt of enough information … that would cause a reasonably prudent person" to make further inquiry. CF Invs., Inc. v. Option One Mortg. Corp., 163 N.H. 313, 316 (2012). "If a party is obligated to investigate, then the party is chargeable with actual notice of what the investigation will show." Amoskeag Bank v. Chagnon, 133 N.H. at 14.

8

Normally construction projects get financed before a builder breaks ground on a project, and construction mortgages get recorded before contractors commence work. Without statutory intervention, first-recorded construction mortgages would always trump mechanics' liens that arise under state law.[6] Typically, construction mortgagees would be race-notice winners as compared to contractors with mechanics' liens, who would be race-notice losers. However, New

---

[6] New Hampshire's mechanic's lien schema was described in In re McLaughlin as follows:

> In New Hampshire, any person who performs labor or furnishes materials to the amount of $15 or more for erecting a house, by virtue of a contract with the owner, shall have a lien on any material furnished and on said structure. NH RSA 447:2. The mechanic's lien arises by operation of law when the labor or materials are furnished. Couillard v. O'Connor, 97 N.H. 89, 91 (1951); Pike v. Rackley, 60 N.H. 469 (1881) ("The lien is a creation of statute, and attaches to the building and the interest of the owner in it by force of statute); see also Whitefield Vill. Fire Dist. v. Bobst, 93 N.H. 229, 231 (1944). …
>
> Once a lien is created, it will expire unless it is perfected in a timely manner after completion of the contract. To perfect a mechanic's lien, a party must acquire an attachment after the contract is completed on the specific property to which it supplied materials. Upon completion of the contract from which the mechanic's lien arose, a single indivisible lien for the whole is created. Boulia–Gorrell Lumber Co. v. East Coast Realty, 84 N.H. 174 (1929). The mechanic's lien continues for 120 days after completion of delivery of goods or performance of services under the contract. The lien must be perfected before it expires. NH RSA 447:9. The time starts to run not from the date the mechanic's lien accrues but from when the final bill is sent or the last work is completed under the contract. Tolles–Bickford Lumber Co. v. Tilton Sch., 98 N.H. 55, 58, (1953); Pike, 60 N.H. at 469. In order to continue or secure the mechanic's lien, the lien holder must attach the property by "writ and return thereon distinctly expressing that purpose," within the 120 day period. NH RSA 447:10. After the mechanic's lien is validly perfected, it has priority over any interests that were created after the mechanic's lien first arose.

McLaughlin, 2011 WL 1706791, at *3-4. RSA 447:5 sets forth the manner in which subcontractors' mechanics' liens are established:

> If a person shall by himself or others perform labor or furnish materials to the amount of $15 or more for any of the purposes specified in RSA 447:2 … by virtue of a contract with an agent, contractor or subcontractor of the owner, he shall have the same lien as provided in said sections, provided, that he gives notice in writing to the owner or to the person having charge of the property that he shall claim such lien before performing the labor or furnishing the material for which it is claimed.

RSA 447:5.

9

Hampshire has adopted an exception to priority laws with respect to mechanic's lien attachments. RSA 447:12-a states, in relevant part:

> [A]ttachment [of a mechanic's lien] shall have precedence and priority over any construction mortgage. … However, such attachment shall not be entitled to <u>precedence as provided in this section</u> to the extent the mortgagee shows that the proceeds of the mortgage loan were disbursed either toward payment of invoices from or claims due subcontractors and suppliers of materials or labor for the work on the mortgaged premises, or upon receipt by the mortgagee from the mortgagor or his agent of an affidavit that the work on the mortgaged premises from which such disbursement is to be made has been completed and that the subcontractors and supplier of materials or labor have been paid for their share of such work, or will be paid out of such disbursement.

RSA 447:12-a (emphasis added). As a result of RSA 447:12-a, construction mortgagees forfeit their usual priority to mechanics' lienholders, except in the two circumstances described in the statute.

Under the facts of this case, the Bond Trustee did not record its construction mortgage before MacMillin and subcontractors began work on the Facility. Rather, it is undisputed that work on the Facility began on or about May 15, 2017—just over a month *before* the Original Bond Trustee recorded its mortgage. The Bond Trustee takes the position that RSA 447:12-a allows it to achieve priority over MacMillin, who would be the race-notice winner (assuming the Bond Trustee had notice—either actual, constructive, or inquiry—of MacMillin's mechanic's lien), to the extent of the $55 million it paid to MacMillin under the Contract.

In support of its position, the Bond Trustee cites a string of cases arising out of the bankruptcy of the Moultonborough Hotel Group, LLC: <u>2010-1 SFG Venture, LLC v. ROK Builders, LLC (In re Moultonborough Hotel Group, LLC)</u>, Bk. No. 10-14214-JMD, Adv. No. 11-1036-JBH (Bankr. D.N.H. Dec. 16, 2011) ("<u>Moultonborough I</u>"); <u>ROK Builders, LLC v. 2010-1 SFG Venture, LLC</u>, No. 12-cv-57-PB, 2012 WL 37779669 (D.N.H. Aug. 30, 2012) ("<u>Moultonborough II</u>"); and <u>Moultonborough III</u>. In all three decisions, the courts applied the rule of priority set forth in RSA 447:12-a and found that the secured claim held by the

10

construction lender's assignee was senior to the mechanic's lien attachment held by the contractor (to the extent of the amount that the mortgagee disbursed to the contractor for materials and labor for the hotel property).  In ruling from the bench, Judge Haines indicated "[t]he statute is unambiguous on its face" and held that the contractor's mechanic's lien "shall not be entitled to precedence to the extent that the mortgagee shows that the proceeds of the mortgage loan were disbursed, either towards invoices from or claims due subcontractors … and for labor or work on the mortgaged premises."  Moultonborough I, Tr., Dec. 15, 2011; Doc. No. 463-2.  The District Court concluded that "the statute unambiguously sets forth the exact terms of priority between a mechanic's lien attachment and a construction mortgage, notwithstanding any prior inconsistent law.  The statute plainly provides that the attachment is not entitled to priority to the extent that mortgage loan proceeds have been disbursed to suppliers or materials or labor."  Moultonborough II, 2012 WL 37779669, at *4.  The First Circuit explained that "the statutory scheme in New Hampshire creates an exception to the race-notice rule for mechanics' liens.  Specifically, a mechanic's lien 'shall have precedence and priority over any construction mortgage.' … This exception is, however, itself subject to an important qualification:  a mechanic's lien 'shall not be entitled to precedence as provided in this section to the extent that the mortgagee shows that the proceeds of the mortgage loan were disbursed … toward payment of invoices from or claims due subcontractors and suppliers of materials or labor for the work on the mortgage premises.'"  Moultonborough III, 726 F.3d at 6.

In the Court's view these statements are fine as far as they go.  However, the Moultonborough courts were not faced with the same (and relatively unusual) fact pattern as presented by this case.  Here, the construction lender's mortgage was not recorded before the work first giving rise to a mechanic's lien claim was performed.  As Judge Kayatta of the First Circuit noted in Moultonborough III, in that case "the mortgage was recorded well before the

11

work for which a lien is claimed was performed." Moultonborough III, 726 F.3d at 5 (emphasis added). Thus, the construction lender's assignee did not need to argue that a race-notice loser, other than a mechanic's lienholder, can claim the benefit of the statute. Further, if RSA 447:12-a were the exclusive manner for determining the priority of competing claims between a construction mortgagee and mechanics' lienholders, as the Bond Trustee argues, then Judge Kayatta would not have needed to discuss or apply the race-notice rule as he did when he stated: "the race-notice rules favor [the construction lender's assignee]." Why would the court address race-notice if it were inapplicable in all circumstances? Because the Moultonborough courts were not faced with the facts that the Court is faced with in this case, the Court finds the Moultonborough case distinguishable.

The New Hampshire Supreme Court has had the opportunity to address RSA 447:12-a, and it has recognized that RSA 447:12-a was enacted "to provide for special treatment for mechanic's liens in determine priority status so that laborers could get paid for their services." Lewis v. Shawmut Bank, N.A., 139 N.H. 50, 52 (1994) (emphasis added). The Court agrees with MacMillin and the Subcontractors that the statute was intended to expand a construction contractor's priority rights in situations where the contractor's lien would otherwise be junior to a construction mortgage. See Alex Builders & Sons, Inc. v. Danley, 161 N.H. 19, 24 (2010) ("'[T]he purpose of the mechanics' lien law is remedial, to guarantee effective security to those who furnish labor or materials which are used to enhance the value of the property of others.'"). The statute was not intended to narrow a contractor's rights in a situation where a contractor's lien is first in time. See id. ("The general rule is to construe remedial statutes liberally in favor of the person the statute is intended to benefit."). The Bond Trustee's argument that construction mortgagees who are also race-notice losers can achieve priority over mechanics' lienholders by

12

establishing one of the two limited circumstances in RSA 477:12-a is not supported by any language in the statute.

Because the facts of this case are materially different from the facts in Moultonborough, and because MacMillin is not seeking "precedence as provided in this section,"[7] i.e., RSA 447:12-a, the Court finds that RSA 477:12-a is inapplicable. Therefore, the priority of MacMillin's mechanic's lien is not impacted by that statute. Rather, the priority dispute between MacMillin and the Bond Trustee is governed by the race-notice rule. If the Bond Trustee had notice of MacMillin's mechanic's lien, which arose prior to the recording of the construction mortgage, MacMillin's secured claim for the outstanding amounts due under the Contract will have priority over the Bond Trustee's secured claim.

While the Subcontractors do not claim priority based on their own race-notice victories, as they all commenced work on site at the Facility after the recording of the construction mortgage, they contend that they nevertheless share in MacMillin's victory, as RSA 447:8 will require the Debtor to pay the Subcontractors what they are owed before the Debtor pays the Bond Trustee. RSA 447:8 provides in relevant part:

> Any person giving notice as provided in RSA 447:5-7 shall … furnish to the owner … an account in writing of the labor performed, professional design services provided, or materials furnished … and the owner or person in charge shall retain a sufficient sum of money to pay such claim, and shall not be liable to the agent, contractor or subcontractor therefor, unless the agent, contractor or subcontractor shall first pay it.

The Subcontractors argue that because they have given notice of their lien claims to the Debtor, the Debtor is in essence a trustee for the benefit of the unpaid subcontractors. The Court agrees that RSA 447:8 may dictate how money the Debtor owes to MacMillin must be handled if

---

[7] As Denron noted in its papers, "[t]he phrase 'as provided in this section' was obviously inserted in recognition that there may be other sources of priority for a mechanic's lienor apart from this statute." Doc. No. 479 at 5-6.

13

MacMillin succeeds on its race-notice claim. However, the Court need not determine at this time whether the Subcontractors have complied with the provisions of RSA 447:6-8 as the issue is not ripe. The issue will be ripe only (1) once the amount of the lien claims held by MacMillin and the Subcontractors are finally determined and allowed, and (2) if the $12 million sale reserve is insufficient to pay all these lien claims in full.

Having determined the legal priority of the competing claims of the Bond Trustee and MacMillin, the Court must next determine whether the facts support MacMillin's and the Subcontractors' contention that the Bond Trustee, as successor to the Original Bond Trustee, was on inquiry notice of MacMillin's mechanic's lien, it being undisputed that MacMillin had not recorded any interest in the Facility as of June 19, 2017. The Bond Trustee contends that this is a disputed fact, and its determination would require limited discovery and an evidentiary hearing. MacMillin contends that the parties agreed to proceed on a stipulated record, a process that presumes that any necessary discovery will be accomplished before submission of the stipulated record. On this point, the Court agrees with MacMillin, although the Court disagrees with MacMillin's characterization of the stipulated record process as akin to a motion for summary judgment. Rather, the stipulated record process is essentially a substitution for a trial, in which all material and relevant facts are submitted as the record on which the Court bases its adjudication of the dispute. Just as discovery would not be permitted after a trial, the opportunity for discovery in this proceeding passed upon submission of the stipulated record, particularly because no need for discovery was presented before or even at the time that the stipulated record was filed. The parties had ample opportunity to conduct discovery prior to their submission of the stipulated record, and the Bond Trustee makes no claim that material evidence was somehow withheld from it during the course of collaborating on a record that exceeds three thousand pages.

The parties did not specifically brief the issue about who carries the burden of proof that the Bond Trustee's mortgage was recorded with notice of the commencement of work at the Facility. In fact, the Bond Trustee argues that whether work commenced prior to the recording of its mortgage, or whether the Bond Trustee was on inquiry notice of such work, is irrelevant, an argument with which the Court already disagrees. To the extent that the Bond Trustee had the burden of proving that it (and the Original Bond Trustee) were not on notice (inquiry or otherwise), it did not offer or point to any evidence in the record to support that conclusion.

Conversely, MacMillin offered undisputed evidence that work had in fact commenced on the property at the time the Original Bond Trustee recorded its mortgage, the rights in which the Bond Trustee succeeded. The most salient evidence was the avowed need to commence tree removal on the property prior to the time that the mortgage was recorded, and the fact that such work had so commenced. Specifically, the stipulated record shows that the wetland permit issued in connection with the project prohibited tree clearing work between June 1, 2017, and July 31, 2017, but the Contract required work to commence by June 30, 2017. Thus, unless tree clearing work commenced before the June 1, 2017, proscription period, the pricing under the Contract was in jeopardy. Accordingly, the Debtor instructed MacMillin to commence work on May 15, 2017, and the Original Bond Trustee paid invoices at the closing that referred to both the wetland permit and the tree clearing that had already occurred at the project site. The Bond Trustee did not refute that such invoices were paid prior to the Original Bond Trustee recording its mortgage, or that they referred to pre-recordation work that would have been obvious to anyone inspecting the work site. Regardless of which party bore the burden of proof on the notice issue, those facts support a finding of at least inquiry notice to the Original Bond Trustee, to whom the Bond Trustee is a successor.

Thus, based on the stipulated record, the Court finds that the Bond Trustee, as the Original Bond Trustee's successor in interest, was aware or should have been aware that MacMillan might possess, and later perfect, an inchoate mechanic's lien prior to the recording of its construction mortgage. For that reason, the Court finds that MacMillin's mechanic's lien has priority over the Bond Trustee's construction mortgage.

The Court notes further that in addition to claiming priority based on MacMillin's race-notice victory, and the provisions of RSA 447:6-8, the Subcontractors also contend that their mechanics' lien attachments have priority over the Bond Trustee's secured claim pursuant to RSA 447:12-a. Because the Court has determined that MacMillin's mechanic's lien is entitled to priority under the race-notice doctrine, and the Subcontractors will share in MacMillin's race-notice victory, the Court need not determine whether the Subcontractors' mechanics' lien attachments also have priority based on the application of RSA 447:12-a.

## IV. CONCLUSION

Having determined that, under the particular facts of this case, New Hampshire's general race-notice rule governs the priority dispute between the Bond Trustee and MacMillin, and that the Bond Trustee, as successor to the Original Bond Trustee, was on notice of MacMillin's mechanic's lien at the time the construction mortgage was recorded, the Court concludes that all amounts due MacMillin under the Contract are secured by a first priority lien on the Facility, and therefore on the sale proceeds. The Subcontractors are entitled to join in MacMillin's race-notice victory for the reasons set forth above. Because the proceeds from the sale of the Facility exceed the amounts due to MacMillin (and the Subcontractors), their claims, in whatever amounts are eventually determined, are deemed fully secured. This opinion constitutes the

16

Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Concord, New Hampshire.

Date:  December 26, 2023         /s/ Bruce A. Harwood
                                 Bruce A. Harwood
                                 Chief Bankruptcy Judge

17